IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| CURTIS MARTINO, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-735 (LMB) |
| | ) | Crim. No. 1:13-cr-350-2 (LMB) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Before the Court is Curtis Martino's ("Martino" or "movant") Motion to Vacate

Conviction under 28 U.S.C. § 2255 ("Motion to Vacate"), in which he argues that his conviction

for violating 18 U.S.C. § 924(c) must be vacated in light of recent Supreme Court precedent.[1]

For the reasons stated below, Martino's Motion to Vacate will be dismissed.

I.

On August 29, 2013, a federal grand jury in the Eastern District of Virginia returned an

indictment charging Martino and 23 co-defendants with being members of a gang called the Nine

Trey Gangster Bloods, which engaged in multiple criminal acts. [Dkt. No. 1]. On September 26,

2013, the grand jury handed down a Superseding Indictment [Dkt. No. 112], which charged

Martino with conspiracy to commit racketeering in violation of 18 U.S.C. §§ 1962(d), 1963(a)

(Count 1); conspiracy to distribute 280 grams or more of cocaine base in violation of 21 U.S.C.

§§ 841, 846 (Count 5); assault with a dangerous weapon in aid of racketeering in violation of 18

U.S.C. § 1959(a)(3)[2] and 2, and assault with a dangerous weapon in violation of Maryland Code

---

[1] Martino has been represented by counsel throughout this proceeding.

[2] 18 U.S.C. § 1959 is known as the Violent Crimes in Aid of Racketeering or "VICAR" statute.

§ 3-202 (Count 12); and carrying, brandishing, and discharging a firearm during and in relation

to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) (Count 13). The predicate offense

for the § 924(c) charge in Count 13 were the assault offenses in Count 12. The assault described

in Count 12 occurred on June 9, 2013.

On November 20, 2013, Martino pleaded guilty to Counts 1 and 13 of the superseding

indictment, and the remaining counts were dismissed on the government's motion. In the

Statement of Facts accompanying the Plea Agreement, Martino admitted the following facts with

respect to the events of June 9, 2013:

> On June 9, 2013, Curtis Martino and three other members of his NTG line-up
> drove from Alexandria, Virginia to [redacted] in Forest Heights, Maryland which
> was the home of K.W., a Crip gang member who cultivated marijuana for sale.
> The four gang members brought firearms and went to the Maryland residence
> with the intent of assaulting K.W. Upon arrival at the residence, Martino and his
> NTG members used a female acquaintance of K.W. to gain access to the
> residence. K.W. was confronted by members of Martino's group. A struggle
> ensued and an NTG member shot K.W. twice in the upper torso with a .38 caliber
> revolver.

[Dkt. No. 262] ¶ 6. On March 21, 2014, Martino was sentenced to a total term of imprisonment

of 260 months, consisting of 140 months as to Count 1 and 120 months consecutive as to Count

13, to be followed by a five-year term of supervised release. Martino did not appeal either his

convictions or his sentence.[3]

---

[3] On October 17, 2018, Martino's sentence was reduced to time served. Despite this change in
movant's status, the Court retains jurisdiction over his motion because he was incarcerated when
his Motion to Vacate was filed, and he remains on supervised release. See United States v.
Bryson, 981 F.2d 720, 726 (4th Cir. 1992) ("Whether an individual is in custody for § 2255
purposes is determined at the time the habeas action is filed"); Scharr v. United States, No. 3:14-
cv-315, 2014 WL 2808219, at *1 (W.D.N.C. June 19, 2014) ("being on supervision is a
sufficient restraint on liberty to satisfy the 'in custody' requirement of § 2255(a)"). On May 24,
2019, the Court transferred jurisdiction of movant's supervised release to the Northern District of
Illinois. The parties agree that despite this transfer, the Court retains jurisdiction over Martino's
Motion to Vacate, because only the court "which imposed the sentence" has the power "to
vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

On June 23, 2016, through counsel, Martino filed the instant Motion to Vacate, arguing that his § 924(c) conviction should be vacated in light of Johnson v. United States, 135 S. Ct. 2551 (2015), in which the Supreme Court held that the "residual clause" of 18 U.S.C. § 924(e)(2)'s definition of "violent felony" is unconstitutionally vague, see id. at 2557-63. On December 21, 2016, the proceedings were stayed to await further guidance from the Supreme Court. On April 17, 2018, the Supreme Court held that the residual clause of 18 U.S.C. § 16's definition of "crime of violence"—which is nearly identical to § 924(c)(3)'s residual clause—is unconstitutionally vague. Sessions v. Dimaya, 138 S. Ct. 1204, 1210 (2018). In the wake of Sessions, the stay was lifted, and the government filed a motion to dismiss, which movant opposed. On June 24, 2019, the Supreme Court held that the residual clause of § 924(c)(3)'s definition of "crime of violence" is also unconstitutionally vague. See United States v. Davis, 139 S. Ct. 2319, 2336 (2019). The parties were ordered to supplement their briefing on whether Martino would be entitled to relief and, if so, what form such relief should take. The matter is now fully briefed and ripe for decision.[4]

## II.

Section 924(c) forbids the use, carrying, or brandishing of a firearm "during and in relation to any crime of violence." 18 U.S.C. § 924(c)(1)(A). It further defines "crime of violence" as any felony offense that (A) "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" or (B) "by its nature . . . involves

---

[4] The government argues that consideration of the Motion to Vacate is barred by a variety of procedural obstacles. For the reasons discussed in Chapman v. United States, 326 F. Supp. 3d 228 (E.D. Va. 2018), Khan v. United States, 330 F. Supp. 3d 1076 (E.D. Va. 2018), Royer v. United States, 324 F. Supp. 3d 719 (E.D. Va. 2018), and Gordillo Portocarrero v. United States, No. 1:10-cr-661, 2019 WL 181119, at *4 (E.D. Va. Jan. 11, 2019), these arguments fail. Accordingly, the Motion to Vacate will be considered on the merits.

a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Id. § 924(c)(3). Subsection (A) of the definition is known as the "force" clause; subsection (B), the "residual" clause.

After Davis, there is no dispute that the residual clause is unconstitutionally vague and cannot be used to support Martino's § 924(c) conviction. What remains is the question of whether the predicate offense underlying Count 13, assault with a dangerous weapon in aid of racketeering in violation of the VICAR statute, 18 U.S.C. § 1959(a)(3), or first-degree assault in violation of Md. Code § 3-202, qualifies as a crime of violence under the force clause and thereby can sustain Martino's § 924(c) conviction under Count 13.

Well-established case law sets forth the methodology the Court must employ in answering this question. To determine whether a given offense qualifies as a crime of violence under the force clause, courts "use an inquiry known as the 'categorical' approach," in which they "look to whether the statutory elements of the offense necessarily require the use, attempted use, or threatened use of physical force"[5] and "consider only the crime as defined, not the particular facts in the case." United States v. Simms, 914 F.3d 229, 233 (4th Cir.), cert. denied, 140 S. Ct. 304 (2019). Although a court employing the categorical approach may not consider the defendant's actual conduct, if "the criminal statute is 'divisible'—that is, if it lists 'multiple, alternative elements, and so effectively creates several different . . . crimes'—the Court may look to 'a limited class of documents, such as indictments and jury instructions, to determine which alternative' served as the predicate offense." Larode v. United States, 356 F. Supp. 3d 561, 570

---

[5] "The term 'physical force' . . . long has been defined as 'violent force—that is, force capable of causing physical pain or injury to another person." United States v. Dinkins, 928 F.3d 349, 354 (4th Cir. 2019) (emphasis in original) (quoting Johnson v. United States (Johnson I), 559 U.S. 133, 140 (2010)).

(E.D. Va. 2019) (quoting <u>Descamps v. United States,</u> 570 U.S. 254, 257 (2013)); <u>see also United States v. Gomez,</u> 690 F.3d 194, 198 (4th Cir. 2012) (instructing that the modified categorical approach should be used "for the sole purpose of determining which part of the statute the defendant violated").

III.

The parties disagree as to whether the Court should conduct a categorical analysis of the generic federal crime represented by the VICAR statute or instead "look through" VICAR to examine the elements of the underlying state law predicate. District courts in Virginia have split on this issue. <u>See United States v. McCall,</u> No. 3:10-cr-170, 2019 WL 4675762, at *4 (E.D. Va. Sept. 25, 2019) (describing different courts' approaches to this issue). In this case, the answer to this question is inconsequential, because both offenses qualify as crimes of violence under § 924(c)'s force clause.

The VICAR statute, 18 U.S.C. § 1959, lists elements in the alternative, defining different offenses based on the predicate crime:

> (a) Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished—
>
> > (1) for murder, by death or life imprisonment, or a fine under this title, or both; and for kidnapping, by imprisonment for any term of years or for life, or a fine under this title, or both;
> > (2) for maiming, by imprisonment for not more than thirty years or a fine under this title, or both;
> > (3) for assault with a dangerous weapon or assault resulting in serious bodily injury, by imprisonment for not more than twenty years or a fine under this title, or both;

5

> (4) for threatening to commit a crime of violence, by imprisonment for not
> more than five years or a fine under this title, or both;
> (5) for attempting or conspiring to commit murder or kidnapping, by
> imprisonment for not more than ten years or a fine under this title, or both;
> and
> (6) for attempting or conspiring to commit a crime involving maiming,
> assault with a dangerous weapon, or assault resulting in serious bodily
> injury, by imprisonment for not more than three years or a fine . . . under
> this title, or both.

18 U.S.C. § 1959(a). Given the structure of this statute, the Court may consult a limited class of

documents, such as the indictment, to determine which specific provision of § 1959 formed the

basis of movant's conviction. See Ellis v. United States, No. 4:08-cr-144, 2020 WL 1844792, at

*2 (E.D. Va. Apr. 10, 2020); Cousins v. United States, 198 F. Supp. 3d 621, 625-26 (E.D. Va.

2016). The indictment, in turn, explicitly states that the VICAR offense at issue in this case is

"assault with a dangerous weapon" in aid of racketeering activity, in violation of 18 U.S.C.

§ 1959(a)(3).[6]

   Although § 1959(b) includes definitions of the terms "racketeering activity" and

"enterprise," the statute does not define "assault." Therefore, "the Court must look to the

elements of the predicate offense as it is generically defined." Davis v. United States, 430 F.

Supp. 3d 141, 145 (E.D. Va. 2019). "[C]ourts have uniformly recognized that various federal

statutes criminalizing 'assault' incorporate the long-established common law definition of that

term." United States v. Passaro, 577 F.3d 207, 217–18 (4th Cir. 2009). The elements of common

law assault are the "(1) willful attempt to inflict injury upon the person of another . . . or (2) a

threat to inflict injury upon the person of another which, when coupled with an apparent present

---

[6] 18 U.S.C. § 1959(a)(3) also prohibits "assault resulting in serious bodily injury." This Court
has previously found that § 1959(a) is divisible not just by subsections but also by clauses, see
Gordillo Portocarrero, 2019 WL 181119, at *8. Because the relevant charge described in Counts
12 and 13 is "assault with a dangerous weapon," the Court's analysis will be limited to that
clause.

ability, causes a reasonable apprehension of immediate bodily harm." <u>Davis</u>, 430 F. Supp. 3d at 145 (citation omitted). Although movant contends that "this definition could include even the slightest offensive touching by way of a battery-type assault," "§ 1959(a)(3) heightens this common law assault definition by additionally requiring the use of a dangerous weapon, that is, an object with the capacity to endanger life or inflict serious bodily harm." <u>Id.</u> (citing <u>United States v. Sturgis</u>, 48 F.3d 784, 787 (4th Cir. 1995) (defining a "dangerous weapon")). "The use of an object to endanger life or inflict serious physical harm plainly involves the use, attempted use, or threatened use of violent, physical force." <u>Jones</u>, 2017 WL 3725632, at *6. Tellingly, in <u>Johnson I</u>, the Supreme Court "quoted approvingly a definition of a violent felony as '[a] crime characterized by extreme physical force, such as . . . assault and battery with a dangerous weapon.'" <u>In re Irby</u>, 858 F.3d 231, 236 (4th Cir. 2017) (quoting <u>Johnson I</u>, 559 U.S. at 140-41). For these reasons, "assault with a dangerous weapon" in aid of racketeering activity satisfies the requirements of § 924(c)'s force clause.[7]

Movant argues, citing only out-of-circuit precedent, that assault with a dangerous weapon is not a crime of violence because it does not require the "use" of a dangerous weapon, but rather simply requires the possession or display of a deadly weapon. This argument fails. As a district court in the Fourth Circuit has persuasively concluded,

> It is axiomatic that an assault cannot be an assault <u>with</u> a dangerous weapon unless a dangerous weapon is used to commit the assault. The text of [18 U.S.C. § 1959(a)] states, 'Whoever . . . assaults with a dangerous weapon' has committed the offense. 'Assault with a dangerous weapon' is a legal term of art with a readily understood meaning. <u>Cf.</u> Black's Law Dictionary 122 (8th ed. 2004)

---

[7] Many district courts in the Fourth Circuit have held the same. <u>See</u> <u>Ellis</u>, 2020 WL 1844792, at *2; <u>Castillo v. United States</u>, No. 3:08-cr-134, 2020 WL 1490727, at *7–8 (W.D.N.C. Mar. 24, 2020); <u>Cisneros v. United States</u>, No. 3:10-cr-73, 2019 WL 6048044, at *4–5 (W.D.N.C. Nov. 14, 2019); <u>Franklin v. United States</u>, No. 3:06-cr-7, 2018 WL 3094888, at *5 (W.D.N.C. June 22, 2018), <u>appeal dismissed</u>, 753 F. App'x 171 (4th Cir. 2019); <u>Cousins</u>, 198 F.Supp.3d at 625-26.

> (containing a dictionary entry for 'assault with a dangerous weapon'). It would require a tortured and unreasonable reading of the statute to reach the conclusion that the phrase 'with a dangerous weapon' modifies 'whoever' rather than 'assault' such that liability could be predicated on simple possession of a weapon.

United States v. Barbeito, No. 2:09-cr-222, 2010 WL 2243878, at *25 (S.D.W. Va. June 3, 2010) (emphasis in original). Moreover, as the Sixth Circuit has concluded, "[r]egardless of whether the deadly weapon touches the victim's body, we cannot imagine one . . . displaying a deadly weapon in the course of an offensive touching without threatening the use of violent force." United States v. Phillips, 768 F. App'x 474, 479-80 (6th Cir. 2019) (internal quotation marks and citation omitted).

Movant further argues that even if 18 U.S.C. § 1959(a)(3) requires the "use" of a dangerous weapon, that offense does not satisfy the requirements of the force clause because it could be committed indirectly by using a weapon such as a toxic chemical; however "[t]his line of reasoning . . . is foreclosed by the Supreme Court's decision in United States v. Castleman, in which the Court held that 'physical force is simply force exerted by and through' human action and that, therefore, a person need not 'directly' touch his victim to exert 'physical force.'" United States v. Mathis, 932 F.3d 242, 264–65 (4th Cir. 2019) (quoting United States v. Castleman, 572 U.S. 157, 170–71 (2014)). "Accordingly, so long as an offender's use of physical force, whether direct or indirect, could cause a violent result, the force used categorically is violent. " Id.

The conclusion that assault with a dangerous weapon is a crime of violence is bolstered by recent authority from the Fourth Circuit. In United States v. Bryant, 949 F.3d 168, 181 (4th Cir. 2020), the Fourth Circuit held that the analogous offense of assault with intent to rob, steal, or purloin from a postal employee by placing his or her life in jeopardy by using a dangerous weapon in violation of 18 U.S.C. § 2114(a) is categorically a crime of violence under § 924(c)'s

force clause because common law "assault requires at least <u>some</u> use or threatened use of force,"

and the "use of a dangerous weapon to put the victim's life in jeopardy transforms the force into

violent physical force." <u>Id.</u> at 181. The Fourth Circuit has also cited approvingly a variety of

other cases that "reached similar conclusions in interpreting other assault statutes." <u>Id.</u> (collecting

cases, including <u>United States v. Verwiebe</u>, 874 F.3d 258, 261 (6th Cir. 2017) (holding that 18

U.S.C. § 113(a)(3) "involves violent force because it proscribes common law assault with a

dangerous weapon, not simple common law assault")); <u>United States v. Brown</u>, 892 F.3d 385,

403 (D.C. Cir. 2018) (observing that "[a]ssault is an offense against an individual, and adding a

dangerous weapon into the mix makes the crime an inherently violent one" because "[u]se of that

weapon as part of the crime materially increases the risk that violence will ensue"). Similarly, in

<u>Larode v. United States</u>, this Court considered the offense of assault on a federal officer with a

dangerous weapon under 18 U.S.C. § 111(b), and observed that "[c]ourts have uniformly held

that by combining the requirement of forcible action with the use of a deadly weapon, § 111(b)

elevates the lower degree of physical force under § 111(a) into violent force sufficient to

establish § 111(b) as a crime of violence." 356 F. Supp. 3d 561, 572 (E.D. Va. 2019) (internal

quotation marks and citations omitted).[8] The same conclusion applies in this case. Given this

wealth of supportive authority, it is clear that the predicate offense of "assault with a dangerous

weapon" in aid of racketeering activity constitutes a crime of violence under the force clause.

---

[8] Although 18 U.S.C. § 111 uses the word "forcibly," while § 1959(a)(3) does not, this difference
is not dispositive. As the Court held in <u>Larode</u>, § 111(b) is a force-clause crime even "in the
absence of physical contact," because "[a] defendant may be convicted of violating § 111 if he
engages in 'such a threat or display of physical aggression toward the officer as to inspire fear of
pain, bodily harm, or death,' which in combination with the use or brandishing of a deadly
weapon is more than enough to satisfy § 924(c)(3)(A)'s requirement of the 'threatened use of
physical force.'" <u>Id.</u> The same is true with respect to § 1959(a)(3). "Us[ing] a dangerous weapon
to commit an assault . . . imposes, at a minimum, the <u>threatened use</u> of physical force against
another." <u>United States v. Barnes</u>, No. 1:13-cr-311, slip op. at 9-12 (E.D. Va. May 7, 2020).

The same conclusion applies if the Court "looks through" to the Maryland offense, Md. Code § 3-202. That statute, which is entitled "Assault in the first degree," provides, in relevant part:

(a)(1) A person may not intentionally cause or attempt to cause serious physical injury to another.

(2) A person may not commit an assault with a firearm, including:

(i) a handgun, antique firearm, rifle, shotgun, short-barreled shotgun, or short-barreled rifle, as those terms are defined in § 4-201 of this article;
(ii) an assault pistol, as defined in § 4-301 of this article;
(iii) a machine gun, as defined in § 4-401 of this article; and
(iv) a regulated firearm, as defined in § 5-101 of the Public Safety Article.

Md. Code, Crim. Law § 3-202(a).[9]

Martino concedes that subsection (a)(1) of § 3-202 categorically qualifies as a crime of violence under the force clause, as the Fourth Circuit held in United States v. Redd, 372 F. App'x 413, 415 (4th Cir. 2010);[10] see also United States v. Battle, 927 F.3d 160, 168 (4th Cir. 2019) (citing Redd approvingly). Martino nonetheless argues that his conviction should be vacated because subsection (a)(2), under which he claims he was convicted, does not satisfy the force clause.[11] Specifically, movant contends that subsection (a)(2) merely represents an elevated

---

[9] This provision of the Maryland code was amended as of May 7, 2020, to include an alternative means of committing first-degree assault by intentionally strangling another. Because this alternative was not part of the statute when Martino was convicted, it will not be considered.

[10] Although the Fourth Circuit in Redd was addressing the definition of a "violent felony" under the force clause of the Armed Career Criminal Act ("ACCA"), that clause is almost identical to § 924(c)'s force clause, except that the § 924(c) force clause applies to force against either the person or property of another, while the ACCA force clause does not apply to property.

[11] Movant argues that § 3-202 is divisible and that the Court should therefore apply the modified categorical approach and consider the indictment, which he claims can only be construed as charging him with a violation of subsection (a)(2), not (a)(1). As a practical matter, it is of little import whether the modified categorical or categorical approach is used, because both subsections constitute crimes of violence.

version of second-degree assault, as codified in Md. Code. § 3-203, which he contends cannot

qualify as a crime of violence. In making this argument, movant relies on United States v. Royal,

731 F.3d 333, 342 (4th Cir. 2013), in which the Fourth Circuit held that Maryland second-degree

assault is not, on its own, categorically a crime of violence under the force clause of the ACCA

because it "reaches any unlawful touching, whether violent or nonviolent and no matter how

slight." Id. Movant argues that although subsection (a)(2) of Md. Code 3-202 heightens second-

degree assault by requiring the assault to have been committed with a firearm, this additional

element is insufficient to render subsection (a)(2) a crime of violence. This argument is

unpersuasive for the same reasons described above with respect to the VICAR offense. "[T]he

harm threatened by an assault is far more violent than offensive touching when committed with a

weapon that is designed to produce or used in a way that is capable of producing serious bodily

harm or death." United States v. Whindleton, 797 F.3d 105, 114 (1st Cir. 2015).

Moreover, the D.C. Circuit has issued a persuasive opinion holding that both subsections

of first-degree assault under Maryland law constitute violent felonies.[12] See United States v.

Haight, 892 F.3d 1271, 1282 (D.C. Cir. 2018), cert. denied, 139 S. Ct. 796 (2019). As the D.C.

Circuit held, it is the "commonsense conclusion" that "the additional elements that convert

Maryland second-degree assault into first-degree assault—the use of a firearm or the intention to

cause serious physical injury—require the defendant to use, attempt to use, or threaten to use

violent force against another person." Id. Because both the VICAR predicate and the Maryland

---

[12] As described above, "violent felony" and "crime of violence" "may generally be considered interchangeably." Grier v. United States, No. 3:06-cr-387, 2016 WL 4472978, at *2 (W.D.N.C. Aug. 23, 2016).

state law predicate qualify as a crime of violence, movant's conviction under Count 13 for

violating § 924(c) will not be vacated.[13]

IV.

For the foregoing reasons, movant's Motion to Vacate will be dismissed by an Order to

be issued alongside this Memorandum Opinion.

Entered this 1ˢᵗ day of July, 2020.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

---

[13] Although the Indictment and Statement of Facts could theoretically be read to suggest that movant simply aided and abetted or attempted an assault, instead of completing it himself, that reading does not alter the Court's conclusion. See Gordillo Portocarrero, 2019 WL 181119, at *7-*8 ("[T]he 'attempted use' of force is indistinguishable from 'the use' of force.") ("It is a fundamental tenet of our criminal justice system that one who aids and abets the commission of an offense 'is punishable as a principal.'") (internal citations omitted).